**UNITED STATES BANKRUPTCY COURT**
**GAINESVILLE DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 21-20935-JRS |
| | ) | |
| DEAN A. DITMAR AND | ) | |
| KELLY E. DITMAR, | ) | **Chapter 11** |
| | ) | **Subchapter V** |
| Debtors. | ) | |
| | ) | |

### JL ENTERPRISES OF GA, LLC'S OBJECTION
### TO CONFIRMATION OF CHAPTER 11 SUBCHAPTER V PLAN

COMES NOW JL Enterprises of GA, LLC ("**JL**"), by and through its undersigned counsel, and files this Objection to Confirmation of Chapter 11 Subchapter V Plan (the "**Objection**"), on the following grounds:

### BACKGROUND

1. The Debtors filed the instant case on August 31, 2021 (the "**Petition Date**").

2. On May 15, 2017, in connection with an asset purchase, Dean Ditmar executed a promissory note on behalf of his former company, DK Enterprises, to the JL in the original principal amount of $871,612.52 (the "**Note**") and simultaneously executed a personal guaranty of the promissory note (the "**Guaranty**").

3. Based on the foregoing, JL filed its proof of claim, claim number 7, in the amount of $684,323.12 on September 30, 2021 (the "**Claim**").

4. On November 29, 2021, the Debtors filed their Plan of Reorganization under Subchapter V of Chapter 11 (the "**Plan**").

5. The Plan treats the Claim in Class 8, general unsecured claims. The Plan provides that JL receive a pro rata distribution of three annual payments of $2,400.00 each.

6. JL will receive a total of $5,793.53, or less than 1% of its claim amount.

7. JL contends that the Plan is does not meet the standard for confirmation and that the Plan was not proposed in good faith.

## GROUNDS FOR OBJECTION TO PLAN

### A. The Debtor's Plan Is Not Fair and Equitable.

8. To confirm a non-consensual Subchapter V Plan, the Court must determine that the plan is fair and equitable with respect to each class of claim that is impaired under, and has not accepted, the plan. 11 U.S.C. § 1191(b).

9. 11 U.S.C. § 1191(c)(2)(A) states that for the plan to be "fair and equitable" with respect to unsecured claims and interests, "the plan provides that all of the debtor's projected disposable income for three years (or up to five years if determined by the court) will be applied to make payments under the plan."

10. 11 U.S.C. § 1191(d) defines disposable income as income that is received by the debtor and that is not "reasonably necessary to be expended" for these specific purposes:

   a. The maintenance or support for a debtor or dependent of the debtor;[1] or

   b. A domestic support obligation that first becomes payable after the date of the filing of the petition;[2] or

   c. Payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor;[3]

11. In the instant case, the only applicable category of expense that the Debtors may deduct from their income are those expenses that are reasonable and necessary for maintenance or support of the Debtors.

---

[1] 11 U.S.C. § 1191 (d)(1)(a)
[2] 11 U.S.C. § 1191 (d)(1)(b)
[3] 11 U.S.C. § 1191 (d)(2)

12. The Plan provides that the Debtors, who have no minor dependents, retain a five bedroom, four bathroom, 5000 square foot house, which Zillow.com values at $1,073,900.00 (the "**House**").

13. Attached to the Plan as Exhibit "C" is the Debtor's post-confirmation monthly projections (the "**Budget**").

14. As broken down below, the Budget shows the Debtors are proposing to spend $6,744.86 per month to maintain the House in the first 17 months of the Plan and $8,261.04 per month to maintain the House in the remaining 19 months of the Plan, while proposing to pay only $200.00 monthly to unsecured creditors.

| Expense | months 1-17 | months 18-36 | Total |
| --- | --- | --- | --- |
| Select Portfolio (first mortgage) | $2,646.64 | $2,646.64 | $95,279.04 |
| Ameris Bank (second mortgage) | $1,702.40 | $3,000.00 | $85,940.80 |
| Real Estate Taxes | $780.10 | $780.10 | $28,083.60 |
| Homeowner's Insurance | $300.00 | $300.00 | $10,800.00 |
| Home maintenance, repair and upkeep | $470.00 | $470.00 | $16,920.00 |
| HOA Dues | $150.00 | $150.00 | $5,400.00 |
| Electricity, Heat and Natural Gas | $350.00 | $350.00 | $12,600.00 |
| Water, Sewer, Garbage Collection | $200.00 | $200.00 | $7,200.00 |
| Forsyth County (delinquent real estate taxes) | $145.72 | $364.30 | $9,398.94 |
| TOTAL | $6,744.86 | $8,261.04 | $271,622.38 |

15. The Plan proposes to spend a whopping $271,622.38 to keep and maintain the House, while only paying a total of $7,200.00 to unsecured creditors.

16. These figures do not even take into account the fact that the first mortgage company has objected to the Plan and is asking for more money to be allocated toward it claim to cure the pre-petition arrearage, which means that the Debtors are going to have to spend even more than has been projected in order to keep the House.

17. JL submits that it is not "reasonable and necessary" for the Debtors to spend this much to keep a house, especially one that is much larger than two individuals need. The Debtors could give up the House and propose a much larger payment to unsecured creditors.

18. Other items that the Debtors allocate for in the Budget that JL believes are too high to be "reasonable and necessary" for the maintenance and support of two people include $605.00 for cable, internet and cell phones, $1,275.00 for food and housekeeping supplies, $200.00 for clothing, laundry and dry cleaning, and $300.00 for "miscellaneous" expenses.

19. The Plan also provides that the Debtors retain a $30,000.00 Porsche Cayenne and a $50,00.00 Ford F-150. The monthly payment on the Ford F-150 is $1,073.66, another expense that JL submits is not "reasonable and necessary."

20. Additionally, JL does not believe that it is "fair and equitable" for the Debtors to propose to pay their unsecured creditors for only three years.

21. 11 U.S.C. § 1191(c)(2) provides for a commitment period of three to five years for subchapter V cases. While § 1191(c)(2) contains no standard for fixing the commitment period, the Court has the discretion to determine the commitment period in subchapter V cases. *See In re Pearl Res. LLC*, 2020 Bankr. LEXIS 2683, at *70 (Bankr. S.D. Tex. September 30, 2020).

22. JL objects to the term of the Plan being limited to three years, as it permits the Debtors to escape payment the payment of their creditors so that they may benefit from their substantial income in the several years after the proposed three-year term.

### B. Creditors Would Receive More in a Chapter 7 Liquidation

23. The Debtors attach a liquidation analysis to the Plan that shows that unsecured creditors would receive nothing if their assets were liquidated by a Chapter 7 Trustee, however JL

believes that the Debtors are undervaluing several of their assets, including the House, household goods and furnishings, and jewelry.

24. While the Debtors state that their appliances and furniture are only worth $5,000.00, their homeowner's insurance policy insures personal property up to $677,173.00 and contains a $10,000.00 "valuables plus" schedule.

25. JL may request to conduct discovery pursuant to Bankruptcy Rule 7034(a)(2) which allows "entry onto designated land or other property…so that the requesting party can inspect…" in order to inspect the contents of the House to confirm the value of the household goods.

26. The Debtors valued their jewelry at $5,000.00 but also have a separate insurance policy on an engagement ring that insures the ring at a value of $13,026.00.

27. JL maintains that it may receive a distribution in a Chapter 7 liquidation that is greater than it would receive under the Plan.

### C. The Default Provision in the Plan is Inadequate

28. The Plan does not provide for adequate default remedies in the event of default as required under 11 U.S.C. § 1191(c)(3)(B).

29. Section 2.3 of the Plan states that if the Debtors do not cure a default, "the injunction of the Plan shall remain in place to prohibit any action other than to enforce the terms of the Plan."

30. This provision would allow the Debtor to not make a single payment to JL and have its debt reduced from $684,323.12 to $5,793.53.

31. JL believes that the Plans should state that upon default, all of JL's rights and remedies under its note and state law will revive.

D. **The Debtors' Plan Has Not Been Proposed in Good Faith**

32. JL finally objects to the Debtor's plan because it has not been proposed in good faith due to the lack of disclosures in the schedules and statement of financial affairs and the Debtors' attempt to maintain their lavish lifestyle at the expense of the repayment of creditors.

33. According to 11 U.S.C. § 1129, the plan must be "proposed in good faith and not by any means forbidden by law." "While the Bankruptcy Code does not define the term, courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *McCormick v. Banc One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995). According to *McCormick*,

> Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan.

49 .3d 1524, 1526 (11th Cir. 1995).

34. "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984). Courts have found a lack of good faith "[p]articularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *Id.* "[T]he taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *In re Phx. Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988).

### i.     *Lack of Disclosures*

35. The Debtors' son graduated from college in May 2022, just three months prior to the filing of the petition. The Debtors paid for their son's college tuition, apartment rent, and all living expenses until he graduated. These payments to an insider, on behalf of an insider or benefitting an insider are not disclosed anywhere on the Statement of Financial Affairs.

36. The Debtors transferred money into the bank account of their bankrupt company in the months prior to filing. These transfers are not disclosed anywhere on the Statement of Financial Affairs. If these payments were in the form of a loan, Schedule B is lacking a receivable from the company

37. These non-disclosures indicate that the petition and Plan were not filed in good faith.

### ii.    *Lavish Lifestyle*

38. As discussed above, the Budget reflects that the Debtors' are attempting to maintain their lavish lifestyle while in Chapter 11 bankruptcy.

39. The three Monthly Operating Reports filed in the case show that the Debtors are living an even more lavish lifestyle than their budget projects.

40. In three months, the Debtors have been on trips to Colorado, where they went fly fishing and visited numerous restaurants and bars, and Charleston, South Carolina, where they stayed in a hotel and visited numerous restaurants and bars. They have spent $1,071.56 on alcoholic beverages at Total Wine and have paid for tennis lessons.

41. "The purpose of the Bankruptcy Code is to provide the debtor with a fresh start, not to preserve a debtor's extravagant lifestyle." *In re Weber*, 209 B.R. 793, 800 (Bankr. D. Mass. 1997)

42. The *Weber* Court found that "A plan in which the Debtor retains 100 percent of the expenditure necessary to support a lavish lifestyle, while proposing to pay a 5 percent dividend to creditors is not proposed in good faith." *Id*

43. The Plan in this case proposes that the Debtors retain 100 percent of the expenditures necessary to support a lavish lifestyle, while proposing only a 0.8% dividend to unsecured creditors.

WHEREFORE, JL prays that its Objection be sustained, the Plan be denied confirmation, and for such other and further relief as deemed just and proper.

Dated: January 20, 2022

**ROUNTREE LEITMAN & KLEIN, LLC**

/s/ *Elizabeth A. Childers*
William A. Rountree, Ga. Bar No. 616503
Elizabeth A. Childers, Ga. Bar No. 143546
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlklawfirm.com
echilders@rlklawfirm.com
*Attorneys for JL Enterprises of GA, LLC*